**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MEYER INVESTMENT COMPANY, INC. ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | Case No: 21-cv-01009 |
| ) | |
| CITY OF ST. CHARLES, MISSOURI ) | |
| ) | |
| And ) | |
| ) | |
| MAYOR DAN BORGMEYER ) | |
| ) | |
| And ) | |
| ) | |
| COUNCIL MEMBER MARY ANN OHMS ) | |
| ) | |
| And ) | |
| ) | |
| COUNCIL MEMBER TOM BESSELMAN ) | |
| ) | |
| And ) | |
| ) | |
| COUNCIL MEMBER VINCE RATCHFORD ) | |
| ) | |
| And ) | |
| ) | |
| COUNCIL MEMBER MARY WEST ) | |
| ) | |
| And ) | |
| ) | |
| COUNCIL MEMBER DENISE MITCHELL ) | |
| ) | |
| And ) | |
| ) | |
| COUNCIL MEMBER JERRY REESE ) | |
| ) | |
| And ) | |
| ) | |
| COUNCIL MEMBER MICHAEL FLANDERMEYER ) | |
| ) | |
| And ) | |

|  |  |
|---|---|
| COUNCIL MEMBER MICHAEL GALBA | ) ) ) |
| And | ) ) |
| COUNCIL MEMBER BART HABERSTROH | ) ) ) |
| And | ) ) |
| COUNCIL MEMBER BRIDGET OHMES | ) ) ) |
| Defendants. | ) ) |

## AMENDED COMPLAINT

Comes now Plaintiff Meyer Investment Company, Inc. ("Plaintiff"), by and through the undersigned counsel, and for its cause of action, states and alleges as follows:

1. Plaintiff, MEYER INVESTMENT COMPANY, INC. is a Missouri corporation, in good standing, and principally located in the County of St. Charles, Missouri.

2. Defendant CITY OF ST. CHARLES, Missouri, is a city created and organized by charter, and is located in the County of St. Charles, Missouri, (the "City").

3. Defendant MAYOR DAN BORGMEYER is the duly elected mayor of the City of St. Charles and a member of the City of St. Charles City Council, (the "Council") and is believed to be a resident of the County of St. Charles, Missouri.

4. Defendant MARY ANN OHMS is a duly elected member of the Council and believed to be a resident of the County of St. Charles, Missouri.

5. Defendant COUNCIL MEMBER TOM BESSELMAN is a duly elected member of the Council and believed to be a resident of the County of St. Charles, Missouri.

6. Defendant COUNCIL MEMBER VINCE RATCHFORD is a duly elected member of the Council and believed to be a resident of the County of St. Charles, Missouri.

7. Defendant COUNCIL MEMBER MARY WEST is a duly elected member of the Council and believed to be a resident of the County of St. Charles, Missouri.

8. Defendant COUNCIL MEMBER DENISE MITCHELL is a duly elected member of the Council and believed to be a resident of the County of St. Charles, Missouri.

9. Defendant COUNCIL MEMBER JERRY REESE is a duly elected member of the Council and believed to be a resident of the County of St. Charles, Missouri.

10. Defendant COUNCIL MEMBER MICHAEL FLANDERMEYER is a duly elected member of the Council and believed to be a resident of the County of St. Charles, Missouri.

11. Defendant COUNCIL MEMBER MICHAEL GALBA is a duly elected member of the Council and believed to be a resident of the County of St. Charles, Missouri.

12. Defendant COUNCIL MEMBER BART HABERSTROH is a duly elected member of the Council and believed to be a resident of the County of St. Charles, Missouri.

13. Defendant COUNCIL MEMBER BRIDGET OHMES is a duly elected member of the Council and believed to be a resident of the County of St. Charles, Missouri.

## FACTUAL BACKGROUND

### Wellhead Protection District Amendment Efforts

14. On or about May 6, 2020, Plaintiff received a violation letter advising Plaintiff that Plaintiff was operating a motor vehicle storage lot on real property owned by Plaintiff located west of 3967 Huster Road and identified as Parcel #5-0077-S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.1100000 (the "Property") and that such use was not a permitted use within the Wellhead Protection District, "WHP" (See "Permitted Uses" and "Conditional Uses," Section 400.320(B)(C)(1)(a-j)[1].).

---

[1] All cited ordinances are of the City of St. Charles Code of Ordinances unless otherwise stated.

15. In an effort to cure the alleged violation and allow the outdoor storage of automobiles within the WHP, Plaintiff was advised by John Boyer of the City Department of Community Development and Dan Mann of the City Department of Public Works (singly and collectively, "Staff"), acting in their official capacity and by and on behalf of the City, to file a "Zoning Text Amendment Application" to the City Planning and Zoning Commission for the purpose of amending the text of the WHP ordinance to allow outdoor automobile storage and to file a "Application for Filing an Appeal to the Board of Adjustment" seeking variance from Ordinance Section 400.700A.

16. Staff provided Plaintiff with the forms and Plaintiff filed a Zoning Text Amendment on July 15, 2020 requesting the aforementioned relief from the Planning and Zoning Commission and an Application for Filing an Appeal to the Board of Adjustment seeking variance from Ordinance Section 400.700A.

17. Staff provided Plaintiff with a proposed bill (later becoming Bill 13154) which amended the text of the WHP ordinance adding a Conditional Use, to wit: "k. Temporary storage of new and used motor vehicles, recreational vehicles, boats, and trailers if permitted as a conditional use if permitted in the underlying zoning district. All stored vehicles, boats, and trailers must be in operable condition."

18. Plaintiff at all times thereafter, for relevant purposes herein, moved forward with its attempt to have the proposed Bill 13154 Text Amendment approved.

19. Plaintiff called Dan Mann on August 24, 2020, to follow up on the status of consideration of the proposed Bill 13154 Text Amendment by the Planning and Zoning Commission and was informed, for the first time, that the Board of Public Works would at the

Board's meeting that night consider proposed Bill 13154 Text Amendment for purposes of making a recommendation to the Planning and Zoning Commission.

20. On August 24, 2020, Plaintiff appeared at the City Board of Public Works meeting where "Amendment to the Wellhead Protection District to Allow Outdoor Storage" was on the agenda for public comment and discussion, as Agenda Item 4(D).

21. At the Board meeting, the Staff presented to the Board a counter proposed bill (later becoming Bill 13155) which amended the text of the WHP ordinance adding a Conditional Use, to wit: "k. Temporary storage of new and used motor vehicles, recreational vehicles, boats, and trailers if permitted as a conditional use if permitted in the underlying zoning district. All stored vehicles, boats, and trailers must be in operable condition." *And in addition added F(2) Design Standards "Other design measures as required to receive a conditional use permit from the City Council including but not limited to the following:*

*a. All areas used for storage and/or parking shall be paved with an approved impervious surface.*

*b. Required pre-treatment of storm-water run-off as approved by the City."* (highlighted are the "Additional Staff Conditions").

22. At such time as the City Board of Public Works reached Agenda Item 4(D), the Board of Public Works announced they were going into closed session with Staff.

23. Upon coming out of closed session, the Board of Public Works introduced a Motion to approve the proposed text amendment to the WHP ordinance, but only with Staff's recommendation of the additional language set forth as Bill 13155 above.

24. There was no public comment allowed or discussion held regarding the proposed text amendment to the WHP ordinance, and Plaintiff was not allowed to speak although Plaintiff was present and requested to be heard.

25. On or about September 28, 2020, Staff sent to Plaintiff its "Summary/Staff Analysis" relative to Plaintiff's application to amend the text of the WHP ordinance (the "Staff Report").

26. The Staff Report recites that "The Board of Public Works discussed this item at their August 24, 2020, meeting. After discussion, the Board was not in favor of the amendment as presented by the Applicant." *See*, Staff Report Case No. TA-2020-11, attached hereto as **Exhibit A**. In point of fact, Plaintiff was not allowed to make a presentation during the public hearing and comments section of the Board of Public Works meeting nor was there any public consideration of the Plaintiff's application.

27. On the evening of September 28, 2020, Case No. TA-2020-11, Plaintiff's Application for Text Amendment of the WHP Ordinance was on the Planning and Zoning Commission meeting agenda and was heard.

28. At the Planning and Zoning Commission meeting, the City Planning and Zoning Commission voted on Plaintiff's proposed text amendment and the vote was 4 members for and 4 members against.

29. Although not on the Planning and Zoning Commission meeting agenda, Staff presented for vote an alternative text amendment to the WHP Ordinance containing the Additional Staff Conditions and the vote was 5 members for and 3 members against after Staff told the Commission that the Board of Public Works approved the Staff version of the amendment at the August 24 meeting.

30. On or about October 20, 2020, the City Council convened and on the agenda were WHP text amendment Bills 13154 (Plaintiff's) and 13155 (containing Staff's Additional Conditions).

31. At the City Council meeting, Bill 13154 was voted upon and the vote was 6 members for and 4 members against. Plaintiff and City Council were informed by Staff that since Plaintiff's application did not receive a passing vote from Planning and Zoning, Bill 13154 needed a supermajority of 7 votes to pass.

32. Bill 13155 was then voted upon, containing the Additional Staff Conditions, and Bill 13155 received the same 6 members for and 4 members against, but Plaintiff was informed that since Staff's counter proposal had received a passing vote from Planning and Zoning, then the Bill did pass.

33. As a result of the passage of Bill 13155, the operation of an outdoor storage facility is possible only if said operation complies with the Staff Additional Conditions.

34. At the time of the passage of Bill 13155, Plaintiff had pending "Application for Filing an Appeal to the Board of Adjustment."

35. The passing of Bill 13155 placed additional conditions on the approval or disapproval of Plaintiff's "Application for Filing an Appeal to the Board of Adjustment" not otherwise present at the time of application.

36. Section 400.1090(A)(4) recites that "An appeal stays all proceedings in furtherance of the action appealed...."

37. In light thereof, and that the "Application for Filing an Appeal to the Board of Adjustment" and the WHP text amendment concern the same Property, the filing of the Appeal to

the Board of Adjustment should have stayed both Bill 13154 and 13155 and the passage of 13155 was therefore illegal and invalid.

38. In the alternative and in light thereof, the City Council passage of the Additional Staff Conditions via Bill 13155 placed conditions on the Property of Plaintiff specific to the Property and invaded the province of what would normally be the Board of Adjustment or considered in a Conditional Use Permit Application (not before the City Council) and thus the passage of Bill 13155 with the Additional Staff Conditions was illegal and invalid.

39. In the alternative and in light thereof, the City Council passage of the Additional Staff Conditions via Bill 13155 was illegal and invalid as it represented an affirmation of actions of the Planning and Zoning Commission outside of the enumerated powers of the Planning and Zoning Commission outlined in Section 400.980 of the St. Charles City Ordinances, "Powers and Duties," (A-J).

40. In the alternative and in light thereof, adding the Additional Staff Conditions to Plaintiff's Text Amendment Application and voting to approve same were acts inconsistent with the enumerated powers of the Planning and Zoning Commission outlined in Section 400.980 of the St. Charles City Ordinances, "Powers and Duties," (A-J), and therefore the vote denying what would become Bill 13154 and approving what would become Bill 13155 should be a nullity, be declared illegal and invalid, and the vote of the City Council in approving Bill 13154 by a 6-4 margin should be binding.

**Current Wellhead Protection District Requirements**

41. The WHP's stated purpose is to "safeguard the public health, safety and general welfare through the protection of ground water used as a public water supply." Section 400.320(A)

8

42. A conditional use in the WHP includes "[t]emporary storage of new and used motor vehicles, recreational vehicles, boats, and trailers if permitted as a conditional use in the underlying zoning district. All stored vehicles, boats, and trailers must be in operable condition." *Id.* at (C)(1).

43. The design standard of the WHP requires that all areas "used for storage or parking shall be paved with an approved impervious surface." *Id.* at (F)(2)(a).

44. The WHP overlay has been in effect since 1998, but the impervious surface requirement was only enacted at the aforementioned October 20, 2020 Meeting.

45. That "impervious surface" is being held to mean a solid concrete surface is required on the entirety of Plaintiff's property for it to continue as a motor vehicle storage lot.

46. That the cost of such impervious concrete surface is prohibitively expensive, being approximately Two Million Dollars ($2,000,000.00), and would render the current and proposed economic use of the property for the storage of motor vehicles impossible, after the Property has been improved for such use and actually used for said purpose for over three years.

47. Plaintiff has taken several remediation efforts to ensure no hazardous materials are absorbed in the Property's underlying soil, including raising the site with 10 feet of compacted fill, the laying of 12" inches of rock, compacting that rock to 8" to create a firm surface, laser leveling the surface to create a positive surface drainage to existing drainage ditches and reservoir in order to capture any storm water for cleansing prior to any release.

48. Section 400.700, which requires all required off street parking facilities (as set forth in Section 400.670) to be paved, does not require paving for parking "space for storage or trucks or other vehicles used in connection with any use." Section 400.680.

49. Other businesses within the WHP are permitted to store trucks and other vehicles connected to their use on unpaved surfaces.

50. Other businesses within the WHP also are susceptible to the contamination of their soil by similar or worse hazards, and yet are not required to pave the entirety of their property with an impervious surface.

51. This disparate treatment imposes economically prohibitive operating costs and insurmountable market competition against Plaintiff in relation to its neighbors and competitors, respectively.

## COUNT I –BILL 13155 VIOLATES THE EQUAL PROTECTION CLAUSE OF THE MISSOURI CONSTITUTION ON ITS FACE

52. Plaintiff restates and incorporates the allegations of paragraphs 1 through 51 as if fully restated in this paragraph.

53. Plaintiff obtained the necessary City grading and fill permits in 2009, raised the Property out of the flood plain, and improved the Property for use as a storage lot; following installation of these improvements to the Property in 2017, Plaintiff continuously used the Property for automobile, boat, truck, and trailer storage until the passage of Bill 13155 which required the Property to be paved with an impervious concrete surface.

54. The WHP district was established without evidence as to what design standards would successfully accomplish the stated goal of protecting the Wellhead.

55. The real property within the WHP is primarily in flood plain and located in zoning districts with light industrial and heavy industrial zoning classifications.

56. Operations of various businesses in the WHP have released hazardous materials, causing pollution, monitoring wells have been installed, and the Missouri Department of Natural Resources is and has been involved in the environmental remediation associated with such releases.

57. No evidentiary showing of the effect of vehicle storage over non-impervious pavement, much less on property with the improvements made by Plaintiff, was made before enaction of the design standards in the WHP.

58. No evidentiary showing of the effect of vehicle storage connected with another use, as compared with vehicle storage as the primary use, over non-impervious pavement was made before enaction of the design standards in the WHP.

59. Current permitted uses, including storage of vehicles connected with another use, which are not subject to the design requirements of the WHP pose similar or greater danger to the Wellhead than that of Plaintiff's Property.

60. Accordingly, the WHP design requirements on automobile, boat, truck, and trailer storage as the primary use treats Plaintiff's Property differently from others within the WHP with similar or greater risk to the Wellhead.

61. There is no rational basis, as required under Article I, Section 2 of the Missouri Constitution, for the difference in treatment of Plaintiff's use of its Property for automobile, boat, truck and trailer storage with the improvements installed by Plaintiff as to require the pavement of an impervious concrete surface that will cost over Two Million Dollars.

62. There is no rational basis, as required under Article I, Section 2 of the Missouri Constitution, for a classification that differentiates between Plaintiff's use of its Property for automobile, boat, truck, and trailer storage and storage of trucks or other vehicles connected to another use.

63. Such requirement of an impervious surface by the design requirements of the WHP is arbitrary and irrational.

WHEREFORE, Pursuant to Article I, Section 2 of the Missouri Constitution, Plaintiff asks this Court for judgment on Count I of its Petition, its attorneys' fees and costs, and to grant the following relief:

A. Declare the passage of Bill 13154 to have been passed without any further improvements to the Property being required and rescind the passage of Bill 13155 as invalid and illegal; or

B. Excise from the language of Bill 13155 (Ordinance 20-146) the Additional Staff Conditions and leave the existing ordinance (Ordinance 20-146) as then amended without any further improvements to the Property being required; or

C. Declare Bill 13155 (Ordinance 20-146) to be illegal and invalid with no further improvements to the Property being required; or in the alternative; and

D. For Plaintiff's attorneys' fees and costs incurred herein and for such other relief as this Court would deem just and proper.

## COUNT II – BILL 13155 VIOLATES SUBSTANTIVE DUE PROCESS UNDER THE MISSOURI CONSTITUTION AS APPLIED TO PLAINTIFF'S PROPERTY

64. Plaintiff restates and incorporates the allegations of paragraphs 1 through 63 as if fully restated in this paragraph.

65. Plaintiff raised the Property out of the flood plain, graded, filled and improved the Property with the grading and fill permit from the City over a ten year period and the Property has been used for automobile, boat, truck, and trailer storage for over three years.

66. The WHP district was established without evidence as to what design standards would successfully accomplish the stated goal of protecting the Wellhead or the need for the dramatic change in the use requirements and improvement standards in the WHP district after over 20 years of existence of the WHP district.

67. The real property within the WHP is primarily in flood plain and located in zoning districts with light industrial and heavy industrial zoning classifications.

68. No evidentiary showing of the effect of vehicle storage over non-impervious pavement, much less on property with the improvements made by Plaintiff, was made before enaction of the design standards in the WHP.

69. The impervious surface requirements of the WHP for vehicle storage are unnecessarily burdensome, confiscatory, and deprive Plaintiff of any viable economic use of the Property.

70. The WHP design requirements regarding vehicle storage are not imposed on all properties in the WHP district that pose a similar or greater risk to the Wellhead and permanently interferes with the use and enjoyment of the Property by Plaintiff of any economic use of the Property.

71. Requiring storage lots within the WHP to be paved with an impervious surface while permitting businesses to store trucks and other vehicle on unpaved lots within the WHP is not substantially related to the alleged purpose of the WHP zoning ordinance.

72. The burdens placed upon Plaintiff's use of the Property by Bill 13155 requiring paving the Property with an impervious concrete surface are disproportionate to the potential harm that could arise from Plaintiff's use of the Property for automobile, boat, truck, and trailer storage in its improved state, particularly when such requirements are not imposed on all properties in the WHP district, including those with no protections to the Wellhead.

73. The requirement by the City and named Defendants of an impervious concrete surface imposed by the design requirements of Bill 13155 for any storage use in the WHP is arbitrary and irrational under Article I, Section 10 of the Missouri Constitution.

13

WHEREFORE, Pursuant to Article I, Section 10 of the Missouri Constitution, Plaintiff asks this Court for judgment on Count II of its Petition, its attorneys' fees and costs, and to grant the following relief:

A. Declare the passage of Bill 13154 to have been passed without any further improvements to the Property being required and rescind the passage of Bill 13155 as invalid and illegal; or

B. Excise from the language of Bill 13155 (Ordinance 20-146) the Additional Staff Conditions and leave the existing ordinance (Ordinance 20-146) as then amended without any further improvements to the Property being required; or

C. Declare Bill 13155 (Ordinance 20-146) to be illegal and invalid with no further improvements to the Property being required; or in the alternative; and

D. For Plaintiff's attorneys' fees and costs incurred herein and for such other relief as this Court would deem just and proper.

## COUNT III – MO. REV. STAT. § 610.027

74. Plaintiff restates and incorporates the allegations of paragraphs 1 through 73 as if fully restated in this paragraph.

75. The City of St. Charles Board of Public Works is a department of the City created by Section 125.570.83.

76. The City's Board of Public Works is a public governmental body as defined by Section 610.010(2) RSMo.

77. Section 125.620 requires the Board of Public Works to keep a full and complete record of all its proceedings and make such record open to the inspection of the public.

78. Section 610.015 RSMo. provides, inter alia, as follows: "... all public meetings shall be open to the public and public votes and public records shall be open to the public for inspection and duplication."

79. Section 610.025 RSMo. authorizes closed meetings by and closed records of public governmental bodies in five designated instances, none of which relate to the consideration of the merits and adoption of legislation relating to real property use.

80. Section 610.030 RSMo. provides that the circuit courts of this state shall have jurisdiction to enforce the provisions of Section 610.010 to 610.115.

81. On August 24, 2020, Plaintiff, as petitioner, appeared before the City Board of Public Works where "Amendment to the Wellhead Protection District to Allow Outdoor Storage" was on the agenda for public comment and discussion, as Agenda Item 4(D).

82. When discussion of Plaintiff's proposed text amendment was opened, Staff, without prior publication or notice, put an alternative text amendment before the Board of Public Works for consideration.

83. At such time as the City Board of Public Works reached Agenda Item 4(D), the Board of Public Works announced they were going into closed session with Staff without publicly announcing the specific reason for closing the public meeting or vote by reference to a specific section of Chapter 610 RSMo. and entering this purpose into the minutes of the Board of Public Works, in violation of Section 610.022 RSMo.

84. Upon coming out of closed session, the Board of Public Works introduced a Motion to approve the proposed text amendment to the WHP ordinance, but only with Staff's recommendation of the additional language set forth as Bill 13155 above.

85. There was no public comment or discussion held, although Plaintiff was present and requested to be heard.

86. The Board of Public Works in closing its meeting for a non-permitted purpose and without compliance with the requirements of Chapter 610 RSMo. knowingly violated the Sections 610.010 to 610.026 RSMo.

87. Planning and Zoning Commission was informed by Staff in its Staff Report to the Commission that Bill 13154, containing Plaintiff's Text Amendment, had been rejected by the Board of Public Works when in fact no public consideration of Bill 13154 was given by the Board, as the Board, upon coming out of closed session, introduced a Motion to approve the proposed text amendment to the WHP ordinance, but only with Staff's recommendation of the Additional Staff Conditions set forth as Bill 13155.

88. The vote of the Board of Public Works as reported in the Staff Report, along with the inaccurate statements of the Staff Report that the Board did not approve Plaintiff's Text Amendment as set out in Bill 13154, improperly affected the consideration of Plaintiff's Text Amendment by the Planning and Zoning Commission.

89. The Planning and Zoning Commission's improper consideration of Plaintiff's Text Amendment, in turn, caused Plaintiff's Text Amendment to be held to an improperly high standard for approval by the City Council, requiring a supermajority, rather than the simple majority that Bill 13155 required and both bills received.

90. Under the provisions of Section 610.027 RSMo. violations of the requirements of Chapter 610 RSMo. are subject to civil penalties ranging from One Thousand Dollars to Five Thousand Dollars per governmental body and/or member.

91. Section 60.027 RSMo. authorizes a court upon finding by a preponderance of the evidence that a knowing violation occurred, to award payment of all attorneys' fees and costs incurred by the party successfully establishing the violation by the governmental body or members.

92. Upon a finding by a preponderance of the evidence that a public governmental body has violated any provision of Sections 610.010 to 610.026, a court shall void any action taken in violation of Sections 610.010 to 610.026, if the court finds under the facts of the particular case that the public interest in the enforcement of the policy of Sections 610.010 to 610.026 outweighs the public interest in sustaining the validity of the action taken in the closed meeting, record or vote.

WHEREFORE, Pursuant to the Missouri Sunshine Law, Section 610.027 RSMo, Plaintiff asks this Court for judgment on Count III of its Petition, for an award of $1,000 to $5,000 per violation per member and/or governmental body, a judgment for its attorneys' fees and costs, joint and severally, against each defendant, its attorneys' fees and costs, and to grant the following relief:

A. Declare the passage of Bill 13154 to have been passed without any further improvements to the Property being required and rescind the passage of Bill 13155 as invalid and illegal; or

B. Excise from the language of Bill 13155 (Ordinance 20-146) the Additional Staff Conditions and leave the existing ordinance (Ordinance 20-146) as then amended without any further improvements to the Property being required; or

C. Declare Bill 13155 (Ordinance 20-146) to be illegal and invalid with no further improvements to the Property being required; or in the alternative; and

D.     For Plaintiff's attorneys' fees costs incurred herein and for such other relief as this Court would deem just and proper.

### COUNT IV – DECLARATORY JUDGMENT UNDER
### MO. REV. STAT. § 527.010, et seq.

93.    Plaintiff restates and incorporates the allegations of paragraphs 1 through 92 as if fully restated in this paragraph.

94.    That the aforesaid acts of the Board of Public Works, Planning and Zoning Commission, and the City Council are arbitrary and unreasonable.

95.    By reason of the foregoing, a controversy exists over the legality and validity of Bill 13155 as passed.

96.    By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities that exist between the parties due to the passage of Bill 13155.

97.    By reason of the foregoing, Plaintiff has been damaged by the passage of Bill 13155 as additional burdens have been illegally placed on Plaintiff's Property.

98.    By reason of the foregoing, Plaintiff has no adequate remedy at law.

WHEREFORE, Pursuant to the Declaratory Judgment Act, Chapter 527 RSMo, Plaintiff moves this Court find judgment in favor of Plaintiff on Count IV of its Petition and grant Plaintiff the following relief:

A.     Declare the passage of Bill 13154 to have been passed without any further improvements to the Property being required and rescind the passage of Bill 13155 as invalid and illegal; or

B.  Excise from the language of Bill 13155 (Ordinance 20-146) the Additional Staff Conditions and leave the existing ordinance (Ordinance 20-146) as then amended without any further improvements to the Property being required; or

C.  Declare Bill 13155 (Ordinance 20-146) to be illegal and invalid with no further improvements to the Property being required; and

D.  For Plaintiff's costs incurred herein and for such other relief as this Court would deem just and proper.

Respectfully submitted,

**SmithAmundsen LLC**

By:  */s/ Heather A. Bub*
John Bradford Goss, #36266
Heather A. Bub, #57993
120 South Central Avenue, Suite 700
Clayton, Missouri 63105
Phone: 314-719-3700
Fax: 314-719-3710
bgoss@salawus.com
hbub@salawus.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of September, 2021, the foregoing was electronically filed with the Clerk of the Court and served upon all counsel of record via the Court's electronic filing system.

*/s/ Heather A. Bub*